William T. BRANTMAN and Joyce Brantman, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. 36555.

United States District Court

N. D. California, S. D.

Oct. 16, 1958.

Long & Levit, San Francisco, Cal., for plaintiffs. Victor B. Levit and Herbert G. Hawkins, San Francisco, Cal., of counsel.

Robert Schnacke, U. S. Atty., Northern District of California, San Francisco, Cal., for the United States. Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., of counsel.

PALMIERI, District Judge.

This is a suit for the refund of taxes alleged to have been erroneously and illegally assessed and collected. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1346(a) (1) (Supp. V).

The taxpayers, who are citizens of the United States, are shareholders of corporations which are resident in the Crown Colony of Singapore. In the years 1951, 1952, and 1953 these corporations declared dividends in favor of plaintiffs aggregating $18,855.15. Before paying these dividends to the plaintiffs, the corporations deducted sums aggregating $5,614.52 as taxes due the government of Singapore, pursuant to Crown Colony of Singapore, The Income Tax Ordinance, 1947 § 40,[1] and paid this amount to the Colony. Thus, the net proceeds received by the taxpayers during the three years totalled $13,240.63.

Plaintiffs reported the gross dividends declared as dividends received on their United States income tax returns for the years in question and claimed a credit against the United States tax due in the amounts deducted by the corporations for Singapore taxes. This credit was claimed as a foreign tax paid pursuant to Int.Rev.Code, § 131 (1939), 26 U.S.C. § 131.[2]

1. That section provides, in pertinent part, as follows:

"(1) Every company which is resident in the Colony shall be entitled to deduct from the amount of any dividend paid to any shareholder tax at the rate paid or payable by the company, as reduced by any relief granted under section 43, 44 or 46 of this Ordinance, on the chargeable income of the year of assessment within which the dividend is declared payable:

"Provided that—

"(i) where tax is not paid or payable by the company on the whole income out of which the dividend is paid, the deduction shall be restricted to that portion of the dividend which is paid out of income on which tax is paid or payable by the company;

"* * *

"(2) Every such company shall upon payment of a dividend, whether tax is deducted therefrom or not, furnish each shareholder with a certificate setting forth the amount of the dividend paid to that shareholder and the amount of tax which the company has deducted or is entitled to deduct in respect of that dividend."

2. That section provides, in pertinent part, as follows:

"(a) [T]he tax * * * shall be credited with:

"(1) In the case of a citizen of the United States * * * the amount of

On April 1, 1955 the District Director of the Internal Revenue Service notified plaintiffs that there were deficiencies in the amounts of federal income taxes paid for the years in question. These deficiencies arose because of the Director's contentions that only the net dividends received were to be reported for United States income tax purposes and that no credit was allowable for the Singapore taxes which had been deducted by the corporations and paid by them to the Colony.

The taxpayers paid the deficiencies in April, 1955 together with additional taxes which had been imposed, and interest. A claim for a refund was filed with the District Director on August 11, 1955, based on taxpayers' contentions that the gross dividends declared should be reported and that the Singapore tax deducted by the corporations should be credited against the United States tax due under Int.Rev. Code, § 131 (1939). This claim was disallowed on February 4, 1957, and this suit was instituted on June 17, 1957.

A Singapore corporation, when declaring a dividend, may choose between two bookkeeping procedures. (1) It may declare a gross dividend and deduct from it, before payment to its shareholders, the tax paid or payable by the corporation on that portion of the corporation's income from which the dividend is paid. This is a dividend "less tax." (2) It may declare a dividend "free of tax," [3] that is, without deduction from the dividend of any taxes paid or payable by the corporation. Crown Colony of Singapore, the Income Tax Ordinance, 1947 § 40.[4] Regardless of the accounting practice employed the corporation is required to furnish "each shareholder with a certificate setting forth the * * * amount of tax which the company has deducted or is entitled to deduct in respect of that dividend." Id., § 40(2). If a dividend "less tax" is declared, the shareholder must report as income, under the Singapore statute, the gross dividend before deduction; if a dividend "free of tax" is declared, the shareholder must report as income "the dividend increased by an amount on account of such taxes corresponding to the extent to which the profits out of which the said dividend has been paid have been charged with such taxes." Id., § 26.[5] The shareholder then sets off against any tax which may be due on his "chargeable" (taxable) income, the amount of the tax which the company deducted or was entitled to deduct, i. e., the amount of tax paid or payable by the corporation, if the dividend is included in the shareholder's chargeable income. Id., § 42.[6] And, if the shareholder has no

any income * * * taxes paid or accrued during the taxable year to any foreign country * * *.

"(h) For the purposes of this section * * * the term 'income * * * taxes' shall include a tax paid in lieu of a tax [imposed] upon income * * * otherwise generally imposed by any foreign country * * *."

3. I use the terms "less tax" and "free of tax" only as conveniences to refer to the bookkeeping transactions involved and without indicating any a priori assumption that the Singapore tax ordinance is similar or identical to the British tax statute which was the subject of decision in Biddle v. Com'r, 1938, 302 U.S. 573, 58 S.Ct. 379, 380, 82 L.Ed. 431.

4. Quoted, note 1, supra.

5. That section provides as follows:

"The income of a person from a dividend paid by a company liable to tax under this Ordinance, United Kingdom income tax, or Empire income tax within the meaning of subsection (3) of section 44 of this Ordinance, shall, where any such tax has been deducted therefrom, be the gross amount before making such deduction; where no such deduction has been made, the income arising shall be the amount of the dividend increased by an amount on account of such taxes corresponding to the extent to which the profits out of which the said dividend has been paid have been charged with such taxes."

6. That section provides, in pertinent part, as follows:

"Any tax—

"(a) which a person has deducted or is entitled to deduct from any dividend under the provisions of section 40 of this Ordinance * * *

shall, when such dividend * * * is included in the chargeable income of any

chargeable income, or if his income is taxable at a lower rate than the rate at which the corporation paid tax on the income out of which the dividend was paid,[7] an appropriate portion of the tax paid by the corporation is refunded to the shareholder. Id., § 89(1).[8]

■■■ The plaintiffs are entitled to a credit for foreign taxes paid under Int. Rev.Code, § 131 (1939) only if the Singapore tax was levied on them as shareholders of the corporation, and not if the tax was levied on the corporation. Otis Elevator Co. v. United States, 1941, 92 Ct.Cl. 590, 36 F.Supp. 328, 331–332. In determining this question, the characterization of the tax in the Singapore ordinance is not conclusive. The shareholder will be considered to have paid the tax, for the purpose of claiming a credit under Int.Rev.Code, § 131 (1939), if what he "has done in conformity to [Singapore] law * * * is the substantial equivalent of payment of the tax as those terms are used in our own statute." Biddle v. Com'r, 1938, 302 U.S. 573, 579, 58 S.Ct. 379, 382, 82 L.Ed. 431. This is so whether the credit be claimed under § 131(a), Biddle v. Com'r, supra, or under § 131(h), Northwestern Mutual Fire Ass'n v. Com'r, 9 Cir., 1950, 181 F.2d 133, 134. Put another way, the shareholder may claim the credit under § 131 if the

foreign tax was paid on fixed dividends owed to him; but not if it was paid on his common interest in corporate earnings. Wisconsin Gas & Electric Co. v. United States, 1944, 322 U.S. 526, 529, 64 S.Ct. 1106, 88 L.Ed. 1434.

■ Turning to an examination of what has been done under the Singapore law, it may be seen that the Singapore tax was paid by the corporations on their chargeable (taxable) income. It was due whether or not dividends had been declared. These factors indicate that the tax is levied on the companies and not on their shareholders, as those concepts are understood in the American tax statutes.[9]

■ Plaintiffs argue that the Colony's treatment of the tax after a dividend has been declared indicates that the tax is levied on the shareholders. As set forth above, the shareholders are required to report the dividend received, plus the deduction, if the dividend is "less tax" or plus the amount of tax paid or payable by the corporation in respect to the dividend, if the dividend is "free of tax." The shareholder then deducts the tax paid or payable by the corporation from any tax which may be due on his income. Thus, the shareholder does not pay any tax on the dividend received to the extent that the corporation has paid taxes on the income from which the dividend has been

---

person, be set off for the purposes of collection against the tax charged on that chargeable income."

7. The Singapore tax ordinance, as stipulated by the parties, taxes both corporate and individual income at a 30% rate. § 39(a) and (b). The individual rate, which is stated separately from the corporate rate, might, presumably, be amended so that it would be lower than the corporate rate.

Conversely, the shareholder might owe a tax on the dividend received which would be higher than the tax paid by the corporation on the income from which the dividend was paid. This might occur because of (1) a higher rate on individual than on corporate income; or (2) the receipt of a dividend paid wholly or partially out of income on which no corporate tax is due. See § 40(1)(i), quoted note 1, supra.

8. That section provides, in pertinent part, as follows:
"If it be proved to the satisfaction of the Comptroller that any person for any year of assessment has paid tax, by deduction or otherwise, in excess of the amount with which he is properly chargeable, such person shall be entitled to have the amount so paid in excess refunded * * *."

9. The tax burden may be, in an economic sense, passed on to the shareholders (through lower dividends) to the same extent that shareholders in American corporations bear the burden of corporate taxes. But our revenue statutes do not, because of this, treat the shareholder as having paid the corporate tax. Biddle v. Com'r, 1938, 302 U.S. 573, 580, 58 S.Ct. 379, 82 L.Ed. 431.

paid. If the shareholder has no chargeable income, the tax paid by the corporation is refunded to the shareholder.[10] It should be noted, however, that the deduction for taxes paid, which the corporation may make from the dividend declared, is made at the rate paid or payable by the corporation, and is "restricted to that portion of the dividend which is paid out of income on which tax is paid or payable by the company." See note 1, supra. These latter provisions might indicate that the amount deducted from the dividend is, even under the Singapore statute, not considered as a tax upon the dividend but upon the corporate income from which the dividend is paid.

■■ The Singapore taxing statute, however, may be said to treat the shareholder as paying the corporate tax for the limited purposes of determining whether any refund is due the shareholder, and of preventing the shareholder from paying a tax on the same income, when paid to him in the form of a dividend, as that on which the corporation has already paid a tax. These purposes, which do not affect the assessment or the payment of the tax, and which are not recognized in the American tax statute,[11] do not make the Singapore tax one paid by the plaintiffs within the meaning of Int.Rev.Code, § 131 (1939). Biddle v. Com'r, 1938, 302 U.S. 573, 580–582, 58 S.Ct. 379, 82 L.Ed. 431. Indeed, one of the purposes of the Singapore tax statute is to relieve the shareholder from the burden of paying any tax on the dividend, to the extent that the corporation has paid a tax on the income from which the dividend is declared. Nor do the purposes for which the Singapore statute treats the shareholder as paying the tax turn the tax paid by the corporation from one on the shareholder's interest in corporate earnings into one on the dividends owed to the shareholder. Wisconsin Gas & Electric Co. v. United States, 1944, 322 U.S. 526, 529, 64 S.Ct. 1106, 88 L.Ed. 1434. I conclude, therefore, that the credit may not be claimed by these plaintiffs.

My conclusion, which has been reached on the basis of an examination of the Singapore statute in the light of the tests set forth in Biddle v. Com'r, supra, is, of course, buttressed by the similar conclusion reached by the Court in that case in regard to the essentially similar British statute there at issue. And see I.T. 3941, 1949–1 Cum.Bull. 86.[12]

Plaintiffs' grounds for distinguishing the conclusion reached by the Supreme Court in the Biddle case are without merit. The British tax there at issue was paid by the shareholders to the same extent that they may here be said to be paying the Singapore tax. 1938, 302 U.S. 573, 580–582, 58 S.Ct. 379, 82 L.Ed. 431. The British taxpayers were, contrary to plaintiffs' suggestion, also entitled to set off the tax paid by the corporation against any individual tax they may have owed. Mary Duke Biddle, 1935, 33 B.T.A. 127, 130–131, affirmed, 2 Cir.,

10. It is also possible, under the circumstances set forth in the second paragraph of note 7, *supra*, that the shareholder might have to pay a tax at a higher rate than was paid by the corporation on the income from which the dividend was paid. Any such additional tax would be, for the purposes of Int.Rev.Code, § 131 (1939), a tax paid by the shareholder and could be, to the extent of the addition, claimed as a credit under § 131. See Biddle v. Com'r, 1938, 302 U.S. 573, 581, 58 S.Ct. 379, 82 L.Ed. 431.

Plaintiffs have not paid any such additional tax. Indeed, plaintiffs have received refunds from the Singapore taxing authorities for two of the years in question.

11. Except to the limited extent provided in Int.Rev.Code, §§ 34, 116 (1954), 26 U.S.C.A. §§ 34, 116. These provisions were not in effect during the years here in question.

12. The Commissioner there held that a tax paid by a Malayan corporation was not paid by the corporation's shareholders so as to entitle them to a credit under Int.Rev.Code, § 131 (1939). The Malayan statute there at issue appears to be identical with the Singapore statute at bar. Until 1946, what is now the Malayan Federation, and the present Crown Colony of Singapore, were both parts of British Malaya.

1936, 86 F.2d 718, affirmed, 1938, 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431. And, contrary to the plaintiffs' suggestion, both the British and the Singapore shareholders may have no taxable income. Compare 302 U.S. 573, 580, 58 S.Ct. 379, 82 L.Ed. 431, with Crown Colony of Singapore, The Income Tax Ordinance, 1947, §§ 33, 34. Finally, plaintiffs point to the fact that the taxpayers, in Biddle, were liable for a surtax on the dividends received, while there is no surtax provision in the Singapore law. This difference is not a ground for holding that the Singapore tax was paid by the plaintiffs. The point is that both the British tax at issue in Biddle and the Singapore tax here are considered for certain purposes, by the foreign authorities, to be paid by the taxpayers; but that these purposes are not sufficient to lead to the conclusion that the taxes have been paid by the taxpayers within the meaning of Int.Rev. Code, § 131 (1939). It is of no consequence that there are differing circumstances behind the foreign authorities' determinations that the shareholders pay the tax.[13]

Plaintiffs' claim that Biddle was "superseded" or "overruled" by a tax treaty entered into between the United States and the United Kingdom,[14] misconceives the effect of the treaty and the use of the Biddle decision as a precedent in this case. The treaty, which it is admitted does not cover this case,[15] provides that,

under certain circumstances, "the recipient of a dividend paid by a corporation which is a resident of the United Kingdom shall be deemed to have paid the United Kingdom income tax appropriate to such dividend * * *." Art. XIII (1), 60 Stat. 1384 (1946). The treaty leaves unimpaired the Supreme Court's interpretation, in Biddle, of Int.Rev.Code, § 131 (1939); and that interpretation is still the basis of determining whether a foreign tax is paid by the American taxpayer who claims the credit therefor. It is only circumstance that the standards set forth in Biddle for interpreting Int. Rev.Code, § 131 (1939) led to a conclusion that the shareholders of the British corporation had not paid the tax. The standards would still be the guide for interpreting that section, even if they had compelled a contrary result in Biddle. The treaty relieves American shareholders of United Kingdom corporations of the consequences of the fact that they are not to be considered as having paid the British tax within the meaning of Int. Rev.Code, § 131 (1939). It does not affect the standards set forth in Biddle for interpreting that section and it does not provide that American shareholders in other than United Kingdom corporations shall be considered as having paid the tax.

The defendant is, therefore, entitled to judgment dismissing the complaint.

13. Plaintiffs' citation of Wisconsin Gas & Electric Co. v. United States, 1944, 322 U.S. 526, 64 S.Ct. 1106, 88 L.Ed. 1434 is inapposite. There the "tax [was] extracted from fixed dividends owed to the stockholder, not merely [as is here the case] from his common interest in corporate earnings." 322 U.S. at page 529, 64 S.Ct. at page 1108.

14. 60 Stat. 1377 (1946).

15. Article XIII(1) of the treaty deals with dividends received from corporations resident in the United Kingdom. 60 Stat. 1384 (1946). Art. II(1) (b) of the treaty provides that "The term 'United Kingdom' means Great Britain and Northern Ireland, excluding the Channel Islands

and the Isle of Man." 60 Stat. 1378 (1946).
Article XXII(1) provides that the treaty may be extended "to all or any of [one of the Contracting Parties'] colonies, overseas territories, protectorates, or territories in respect of which it exercises a mandate, which impose taxes substantially similar in character to those which are the subject of the present Convention. * * * In the absence of such extension, the present Convention shall not apply to any such territory." 60 Stat. 1387 (1946). This provision was amended in 1955, U.S. Treaty Ser., No. 3165 (Dep't State 1955). Plaintiffs do not claim that the provisions of the treaty were extended to the Crown Colony of Singapore.

This opinion shall constitute the Court's Findings of Fact and Conclusions of Law under Fed.R.Civ.P. 52(a), 28 U.S.C.

Settle order and judgment on notice in accordance herewith.

