# CLAUDE AND MARGARET O'NEIL *v.*
# DEPARTMENT OF REVENUE

Brian A. Steenson, Brown, Hansen & Steenson, P. C., Portland, represented plaintiffs.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered July 19, 1976.

CARLISLE B. ROBERTS, Judge.

Plaintiffs appeal from defendant's Order No. I 75-41, issued December 10, 1975. The question presented is whether the State of Oregon has jurisdiction to tax a nonresident for distributed and undistributed

dividend income received by him or credited to him which was derived from business activity carried on in Oregon by an electing small business corporation, a corporate form which is accorded special treatment under federal law for income tax purposes.

Claude and Margaret O'Neil, husband and wife, are shareholders in Reid-Strutt, Inc., an Oregon corporation qualified to do business under the laws of the States of Oregon, Washington and Idaho. At all relevant times, Reid-Strutt, Inc., had elected to be taxed for federal purposes under Subchapter S of IRC (1954), §§ 1371 et seq. The corporation's fiscal year ended on September 30, 1973. On that date, plaintiffs owned 821 shares of Reid-Strutt, Inc., stock. During fiscal year 1973, plaintiffs received $3,284 in dividends from Reid-Strutt, Inc., and reported $4,037.14 on their 1973 federal income tax return as their proportionate share of the undistributed taxable income of Reid-Strutt, Inc.

Pursuant to ORS 316.127(5), the State of Oregon is attempting to tax the dividend income received by the O'Neils which resulted from income produced within the State of Oregon. The statute reads:

"* * * [T]he distributed and undistributed taxable income of an electing small business corporation for federal income tax purposes derived from or connected with sources in this state does constitute income derived from sources within this state for a nonresident individual who is a shareholder of such a corporation, * * *."

The plaintiffs assert that, despite the clear intent of the legislature to tax such income, the State of Oregon is without power to levy such a tax, apparently because of the due process clause of the U.S. Constitution, Amendment XIV.

Reid-Strutt, Inc., had elected to come within the

Subchapter S provisions of the Internal Revenue Code, IRC (1954), §§ 1371-1379. These provisions allow a qualified corporation to avoid taxation at the corporate level if the shareholders are willing to be taxed on its income on their personal returns. IRC (1954), § 1373. Although the Subchapter S corporation generally does not have to pay any taxes, there are occasional exceptions. IRC (1954), § 1378.

In Oregon, ORS chapter 317 (the state's Corporation Excise Tax Law of 1929) generally taxes every business corporation "doing or authorized to do business within this state," measuring the tax by the corporation's net income as defined in the act. However, ORS 317.320 virtually exempts such a corporation as Reid-Strutt, Inc., from the tax:

> "Distributed and undistributed taxable income of an electing small business corporation under section 1373 of the Internal Revenue Code, shall be deductible from gross income under this chapter * * *."

Under both the federal and the Oregon system of income taxation, although a Subchapter S corporation is a taxable entity, neither jurisdiction generally will subject it to tax at the corporate level. The tax must be properly reflected in the personal income tax returns of the receiving shareholders. Having failed to tax the income at the corporate level, the state, either through ORS 316.062 (residents) or ORS 316.127(5) (nonresidents), taxes the distributed and undistributed income of a Subchapter S corporation on the individual's personal return. The same provisions allow the shareholders deductions of net operating losses of the electing small business corporation properly reported on their personal income tax returns. ORS 316.127(5).

The plaintiffs do not question the right of the State of Oregon to tax Reid-Strutt, Inc., but they do

question the power of Oregon to tax the dividend income received by a nonresident. Citing *Middlekauff v. Galloway,* 151 Or 671, 674, 52 P2d 197, 199 (1935), they claim that the tax situs of the dividends, under the doctrine of *mobilia sequuntur personam* (movables follow the law of the domicile of the person), is outside the State of Oregon, since the domicile of plaintiffs is outside the state. The plaintiffs also argue that the only connection that plaintiffs had with the State of Oregon was their ownership of stock in Reid-Strutt, Inc. They never entered the state to transact business and therefore contend that they are not subject to the state's power to tax.

■ Guidance in answering the questions presented by the plaintiffs is found in a series of U.S. Supreme Court cases that were handed down some 35 years ago. The rulings of these cases are: A state has tremendous powers to impose taxes; such power is only limited where the state has no relation to the subject of the tax; and in determining whether a relation exists, the tax will be examined for its actual characteristics, avoiding legal technicalities.

A leading case depicting the great power of a sovereign state to impose taxes is *Curry v. McCanless,* 307 US 357, 59 S Ct 900, 83 L Ed 1339, 123 ALR 162 (1939). In that case, the court held that both Tennessee and Alabama could constitutionally impose an inheritance tax on securities placed in an Alabama trust by a Tennessee domiciliary where the property passed to a Tennessee domiciliary upon the death of the decedent. Invoking the maxim of *mobilia sequuntur personam,* the lower courts had decided that the case could be resolved by determining the legal situs of the intangible securities. By holding that both states may tax the property, the Supreme Court rejected any rule which attempted to give intangibles a single taxable situs. It thus rejected a rule which

held that the doctrine of *mobilia sequuntur personam* was constitutionally guaranteed. The court said:

> "* * * But when the taxpayer extends his activities with respect to his intangibles, so as to avail himself of the protection and benefit of the laws of another state, in such a way as to bring his person or property within the reach of the tax gatherer there, the reason for a single place of taxation no longer obtains, and the rule is not even a workable substitute for the reasons which may exist in any particular case to support the constitutional power of each state concerned to tax. * * * Shares of corporate stock may be taxed at the domicile of the shareholder and also at that of the corporation which the taxing state has created and controls; *and income may be taxed both by the state where it is earned and by the state of the recipient's domicile.* * * *" (Emphasis supplied.) 307 US at 367-368, 83 L Ed at 1348.

Although apparently uncommon today, the practice of taxing dividends upon their receipt by nonresident shareholders has been utilized in the past. For example, the State of Wisconsin imposed a Privilege Dividend Tax "[f]or the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in this state, * * *."

In *Wisconsin v. J. C. Penney Co.*, 311 US 435, 61 S Ct 246, 85 L Ed 267, 130 ALR 1229 (1940), the Supreme Court held that the dividend tax as applied to nonresident shareholders was constitutional. The court reasoned that there certainly was a power to tax a corporation on its earnings according to business done within the state. It therefore reasoned that there was no invalidity if the tax was postponed "until such earnings are paid out in dividends. * * *" 311 US at 442, 85 L Ed at 269. The court emphasized that the incidence of a tax was tied to corporate earnings with-

in the State of Wisconsin and it was the governmental climate created by that state that allowed the earnings to flow forth.

The court also emphasized that it will look through the legal niceties placed around the transaction to determine its true effect:

"The Constitution is not a formulary. It does not demand of states strict observance of rigid categories nor precision of technical phrasing in their exercise of the most basic power of government, that of taxation. For constitutional purposes the decisive issue turns on the operating incidence of a challenged tax. A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly civilized society." 311 US at 444, 85 L Ed at 270.

The holding in the *J. C. Penney* case was reaffirmed in *Harvester Co. v. Dept. of Taxation,* 322 US 435, 64 S Ct 1060, 88 L Ed 1373 (1944). This affirmation of the court's holding in *Wisconsin v. J. C. Penney Co., supra,* concludes as follows:

"We think that Wisconsin may constitutionally tax the Wisconsin earnings distributed as dividends to the stockholders. It has afforded protection and benefits to appellants' corporate activities and transactions within the state. These activities have given rise to the dividend income of appellants' stockholders and this income fairly measures the benefits they have derived from these Wisconsin activities. * * *" 322 US at 442, 88 L Ed at 1379-1380.

The plaintiffs argue that the Wisconsin Privilege Dividend Tax cases are not controlling because, al-

though the tax was imposed upon the stockholders, the tax was actually assessed against the corporation paying the dividends. The court does not agree with this conclusion. A reading of the cases clearly indicates that the U.S. Supreme Court would have sustained the tax whether it was imposed on the corporation or on the stockholders. In addition, the Supreme Court later held that the tax was on the stockholders and not on the corporation. *Wisconsin Gas Co. v. United States,* 322 US 526, 64 S Ct 1106, 88 L Ed 1434 (1944), held that, upon paying Wisconsin's dividend tax, it was the stockholders and not the corporation who could claim it as a deduction on their federal income tax returns. The corporation was merely the government's agent to withhold the tax.

Plaintiffs make one further argument. They point out that

"\* \* \* subchapter-S corporations with Oregon resident shareholders doing business in foreign states pay taxes to the foreign states on their income earned in the foreign states and then the income is taxed again by the state of Oregon to its resident shareholders. Therefore Oregon is receiving tax on income which it would normally not receive if the normal allocation factors were applied to the income earned by the corporation. Therefore the state of Oregon is receiving a double benefit if it is ultimately held that the state of Oregon may tax nonresident shareholders since it is taxing income earned outside the state by the corporation if it has resident shareholders and also taxing nonresident shareholders on their subchapter-S dividends. If it is held that the corporation is the source of income and not the shareholders, then the income should be apportioned for all shareholders, whether residents or nonresidents."

Plaintiffs' argument is not clear and is not precisely in point as to the question before the court. However,

Oregon will not receive a double benefit in any event because ORS 316.082 provides a credit for Oregon residents for income taxes paid to another state on the same income.

■ The court concludes that both the distributed and undistributed income of an electing small business corporation under Subchapter S of the Internal Revenue Code is subject to Oregon's personal income tax, even if it is received by a nonresident of the State of Oregon. The State of Oregon has the power to tax income from a corporation operating within its physical borders and there is no reason why the imposition of the tax cannot be delayed until its receipt by the shareholders of that corporation. Since the doctrine of *mobilia sequuntur personam* is not constitutionally mandated, the intent of the legislature to tax Subchapter S dividends, specifically enunciated in ORS 316.127(5), must prevail.

Defendant's Order No. I 75-41 is affirmed. Defendant is awarded its statutory costs.